UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| PROVIDENT SAVINGS BANK, F.S.B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-CV-151 RLW |
| | ) | |
| FOCUS BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This diversity suit concerns which of two banks is liable for a forged or altered check. The case is before the Court on Plaintiff Provident Savings Bank, F.S.B.'s ("Provident Bank") Motion for Summary Judgment on Count I of it First Amended Complaint (ECF No. 25). Defendant Focus Bank opposes the motion and it is fully briefed. For the following reasons, the Court will grant the Motion in part and deny it in part.

**Factual Background**

For purposes of summary judgment, the Court finds the following facts:

On April 29, 2019, a customer of Provident Bank named Charlene Baillie deposited in her account a check dated April 24, 2019, in the amount of $150,520.00 (the "Check"), made payable to the Baillie Client Trust Account. The Check shows that the drawer is "Medlin Equipment Company" located in Charleston, Missouri, and that the payor bank is Focus Bank. The next day, Provident Bank presented the Check to Focus Bank for payment through the Federal Reserve Bank ("FRB"). Focus Bank honored the Check and paid it.

Sometime thereafter, Medlin Equipment Company ("Medlin"), Focus Bank's customer, alerted Focus Bank that the Check was fraudulent. On May 14, 2019, Focus Bank submitted a

return through the FRB, resulting in a credit to Focus Bank's account and a debit to Provident Bank's account with the FRB. Three days later, Provident Bank submitted a Claim of Late Return through the FRB, resulting in a credit to Provident Bank's account and a debit to Focus Bank's account. Focus Bank then submitted a response through the FRB on May 23. In the response, Focus Bank stated, "The item presented was altered or fictitious because the security features stated on the face of the check don't appear to have been present" and that it "took all action necessary to entitle us to recover our payment within the deadlines in Regulation J and CC." Focus Bank also submitted an "Affidavit of Alteration" claiming that the Check was a "fraudulent item" and contained a "forged signature."

The FRB credited Focus Bank's account and debited Provident Bank's account for the amount of the Check. On June 10, 2019, counsel for Provident Bank sent Focus Bank a demand letter requesting the $150,520.00. Focus Bank responded in a letter to Provident Bank's counsel, "Under Mo Rev Stat § 400.4-208(4), upon presentment of the check Provident Bank warranted the creation of the check was authorized. The check was not created or authorized by the account holder and your client breached its presentment warranty under the Missouri Uniform Commercial Code."

Provident Bank filed this action on November 3, 2019. Its Amended Complaint (ECF No. 25) asserts claims against Focus Bank for strict liability under § 400.4-302 of the Missouri Uniform Commercial Code (Count I); breach of warranty under 12 C.F.R. § 229.34(d)(1) (Regulation CC) (Count II); and common law negligence (Count III). Provident moves for summary judgment on the strict liability claim in Count I, which is based on Focus Bank's failure to timely return the Check within the midnight deadline established by § 400.4-302.[1]

---

[1]The "midnight deadline" is midnight of the banking day an item is received by a payor bank. § 400.4-302(a)(1), Mo. Rev. Stat.

2

**Summary Judgment Standard**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "The nonmoving party may not rely on allegations or denials" but rather "must substantiate [its] allegations with sufficient probative evidence that would permit a finding in her favor on more than mere speculation or conjecture." Carter v. Pulaski Cnty. Special Sch. Dist., 956 F.3d 1055, 1059 (8th Cir. 2020) (quoting Ball v. City of Lincoln, Neb., 870 F.3d 722, 727 (8th Cir. 2017) (cleaned up)).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

**Discussion**

Provident Bank moves for summary judgment on Count I, stating that Section 400.4-302 imposes strict liability on payor banks such as Focus Bank that fail to return checks within the midnight deadline required by statute. Provident Bank asserts that because Focus Bank admits it returned the Check well after the midnight deadline, it is strictly liable for the amount of the Check.

The statute provides as follows:

> **400.4-302. Payor bank's responsibility for late return of item**
> (a) If an item is presented to and received by a payor bank, the bank is accountable for the amount of:
>
> (1) a demand item, other than a documentary draft, whether properly payable or not, if the bank, in any case in which it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, whether or not it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or
>
> (2) any other properly payable item unless, within the time allowed for acceptance or payment of that item, the bank either accepts or pays the item or returns it and accompanying documents.
>
> (b) The liability of a payor bank to pay an item pursuant to subsection (a) is subject to defenses based on breach of a presentment warranty (Section 400.4-208) or proof that the person seeking enforcement of the liability presented or transferred the item for the purpose of defrauding the payor bank.

§ 400.4-302.

Provident Bank contends it is entitled to summary judgment on its strict liability claim under § 400.4-302(a)(1) because it is undisputed that Focus Bank, the payor bank, paid the Check and did not return it or send notice of dishonor until long after the midnight deadline, and

instead returned the Check through the Federal Reserve at a later date, stamped as Altered/Fictitious.

Missouri has adopted the Uniform Commercial Code. Under the UCC, a payor bank is strictly liable if it fails to meet its midnight deadline under § 400.4-302. See Central Bank & Trust Co. v. First Northwest Bank, 332 F. Supp. 1166, 1169 (E.D. Mo. 1971)) ("Uniform Commercial Code § 4-302 imposes strict liability upon a payor bank for the full amount of any demand item other than a documentary draft that the bank 'does not pay or return the item or send notice of dishonor until after its midnight deadline' [midnight of the banking day of receipt of the item]."), aff'd, 458 F.2d 511 (8th Cir. 1972); see also Whalen & Sons Grain Co. v. Mo. Delta Bank, 496 F. Supp. 211, 214 (E.D. Mo. 1980) ("A payor bank is strictly liable under [§ 400.4-302] if it fails to comply."); Morgan Guar. Trust Co. of New York v. Am Savings & Loan Ass'n, 804 F.2d 1487, 1499 (9th Cir. 1986) ("Courts have universally held that payor banks are strictly liable for violation of 4–302 deadlines.") (citations omitted). As a result, a payor bank's "failure to give notice of dishonor within the statutory period nails down the liability irrespective of whether or not it would otherwise had been properly payable." Central Bank, 332 F. Supp. at 1169 (citation omitted).

"A plaintiff establishes a prima facie case for liability of a payor bank when it shows that a check which is the basis for the suit has been untimely dishonored, and the payor bank then has the burden to prove an excuse or defense for the untimely dishonor." Citizens Fid. Bank & Trust v. Southwest Bank & Trust, 472 N.W.2d 198, 201 (Neb. 1991). Thus, Focus Bank will be liable to Provident Bank for the amount of the Check unless it can establish a defense.

As quoted above, the Missouri statute provides only two exceptions to the rule of strict liability. These are defenses based on breach of a presentment warranty (§ 400.4-208), or proof that the person seeking enforcement of the liability presented or transferred the item for the

purpose of defrauding the payor bank. Provident Bank states there is no contention it presented the Check for the purposes of defrauding Focus Bank, and contends it did not breach any of the presentment warranties of § 400.4-208.

The four presentment warranties set forth in § 400.4-208(a)(1)-(4) are:

> (a) If an unaccepted draft is presented to the drawee for payment or acceptance and the drawee pays or accepts the draft, (i) the person obtaining payment or acceptance, at the time of presentment, and (ii) a previous transferor of the draft, at the time of transfer, warrant to the drawee that pays or accepts the draft in good faith that:
>
> (1) the warrantor is, or was, at the time the warrantor transferred the draft, a person entitled to enforce the draft or authorized to obtain payment or acceptance of the draft on behalf of a person entitled to enforce the draft;
>
> (2) the draft has not been altered;
>
> (3) the warrantor has no knowledge that the signature of the purported drawer of the draft is unauthorized; and
>
> (4) if the draft is a demand draft, creation of the demand draft according to the terms on its face was authorized by the person identified as drawer. Nothing in this section shall be construed to impair the rights of the drawer against the drawee.

§ 400.4-208(a), Mo. Rev. Stat.

Focus Bank pleaded an affirmative defense that Provident Bank breached one or more of its presentment warranties. On summary judgment, Focus Bank asserts the evidence shows genuine issues of material fact exist as to whether Provident Bank breached the presentment warranties of § 400.4-208(a)(3), that it did not have knowledge the signature of the purported drawer on the Check was unauthorized, and § 400.4-208(a)(2), that the Check had not been altered.

Affirmative defenses are assertions by a defendant raising new facts and arguments that, if true, defeat a plaintiff's claims. The defendant bears the burden of proof with respect to its

affirmative defenses. Perrin v. Papa John's Int'l, Inc., 114 F.Supp.3d 707, 720 (E.D. Mo. 2015). A plaintiff seeking summary judgment on an affirmative defense must "inform[] the district court of the basis for its motion and identify[ ] those portions of the record which show a lack of a genuine issue," but there is no requirement that the plaintiff "support its motion with materials negating the affirmative defense." Id. (quoting Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Celotex Corp., 477 U.S. at 322)). Instead, the defendant as the party with the burden of proof on the affirmative defense "must present evidence sufficient to create a genuine issue of material fact to survive a properly supported summary judgment motion." Crotty v. Dakotacare Admin Servs., Inc., 455 F.3d 828, 831 (8th Cir. 2006). "Thus, if a defendant fails to make a showing sufficient to establish an essential element of a defense on which it will bear the burden of proof at trial, Rule 56(c) 'mandates the entry of summary judgment' against it." Perrin, 114 F.Supp.3d at 721 (quoting Celotex Corp., 477 U.S. at 322); see also Fed. R. Civ. P. 56(c)(1).

The Court now examines Focus Bank's arguments and evidence in support of its two affirmative defenses.

  A. The Check Was Not "Altered" Under UCC § 400-4.208(a)(2)

The only evidence in the summary judgment record as to possible alteration of the Check is from Focus Bank's retained expert, Richard M. Fraher, J.D., Ph.D., and Medlin's General Manager, Mr. Parris. Dr. Fraher opines that the Check was created by (i) making a digital image of a genuine, original check drawn on Medlin's account at Focus Bank and signed by Mr. Parris, then (ii) digitally altering the captured image to create an altered version of the digital image by changing the payee, the amount, the check number, and the date while leaving every other element of the digital image unchanged, and finally (iii) printing the Check on commercially available check stock. (ECF 73 at 13.) Focus Bank states that Dr. Fraher's opinion is supported by his review and analysis

of, among other things, color images of the Check, a second, nearly identical, fraudulent check deposited by Ms. Baillie at Provident Bank and drawn on Medlin's account at Focus Bank (the "Second Check"), and genuine check stock used by Medlin in April 2019. Focus Bank also says Dr. Fraher's opinion is consistent with Mr. Parris's Declaration, which states that the signature on the Check appears to be a copy of his genuine signature and offers Mr. Parris's conclusion that the Check and Second Check were created from a genuinely issued Medlin check signed by him and sent to one of Medlin's vendors.

Focus Bank contends this evidence would permit a reasonable jury to conclude that the Check is an alteration as defined by the UCC—i.e., "an unauthorized change" in a genuinely issued Medlin check that modifies Medlin's obligations, § 400.3-407—and therefore Provident breached its presentment warranty under § 400.4-208(a)(2).

The Court does not agree. The Missouri UCC defines "alteration" to mean "(i) an unauthorized change in an instrument that purports to modify in any respect the obligation of a party, or (ii) an unauthorized addition of words or numbers or other change to an incomplete instrument relating to the obligation of a party." § 400.3-407(a).

Under the UCC, courts distinguish between altered and counterfeit checks. "The bank on which a check is drawn warrants to the presenting bank that the check is genuine, . . . hence not forged, while as we know the presenting bank warrants that the check hasn't been altered since its issuance." Wachovia Bank, N.A. v. Foster Bancshares, Inc., 457 F.3d 619, 622 (7th Cir. 2006). An altered check is an original, genuine check that has undergone a physical change, modification, or effacement of some sort; for example, by writing in or changing the payee or the payment amount, by chemical washing, or by "whiting out or otherwise physically effacing" the original check itself. Id. at 620. See Charter Bank Northwest v. Evanston Ins. Co., 791 F.2d 379, 383 (5th Cir. 1986) ("Alteration presupposes a genuine instrument that has been fraudulently changed.").

In contrast, a forged or counterfeit check replaces the genuine check, such as where fraudsters use "sophisticated copying technology to produce a copy that was identical in every respect to the original check (including the authorized signature by [the purported payor]) except for an undetectable change of the payee's name." Wachovia Bank, 457 F.3d at 621. The use of sophisticated copying technology to modify and replace an original check describes Focus Bank's evidence showing how the Check was created, and corresponds to its evidence that the Check was not a genuine Medlin check but was based on a genuine check. Thus, the Court finds the Check is forged or counterfeit.

Courts that have addressed the issue appear to uniformly hold that a counterfeit check—i.e., one that is not a modification of an original check but rather is a copy or is a new, different check—is not an altered check under the UCC. In Chevy Chase Bank, F.S.B. v. Wachovia Bank, N.A., 202 F. App'x 232 (4th Cir. 2006) (unpublished opinion), the Fourth Circuit distinguished between an original, altered check and one that was "forged or copied (and therefore counterfeit)." Id. at 234. There, the payor bank "failed to offer any evidence from which a reasonable factfinder could conclude that the check was altered as opposed to counterfeited" and, as a result, it could not carry its burden of proving that the depositary bank breached its presentment warranty. Id. See also Firstar Bank, N.A. v. Wells Fargo Bank, N.A., 02-C-186, 2004 WL 1323942, at *7 (N.D. Ill. June 14, 2004) (where there was no unauthorized change or addition to a check that changed the obligations of the parties, and instead it was a counterfeit item in its entirety, the court rejected the argument that the check was altered: "Whatever else may be said about such a situation, it is not an alteration under the UCC."); Bank of America, N.A. v. Amarillo Nat'l Bank, 156 S.W.3d 108, 111 (Tex. Ct. App. 2004) (holding check that was a copy of a genuine check, printed on different paper and of a different size than the genuine check, was not an "alteration" under the UCC because it was not a physical modification of the preexisting document, but rather was a new, different physical

9

document that was a copy and a "fake item"); Citizens Fid. Bank & Trust, 472 N.W.2d at 199 (describing as "counterfeit" a check that appeared identical to genuine checks used by the account holder, except for a slight difference in "check safety paper," but which was not prepared or issued by the account holder and no person on behalf of the account holder caused the facsimile signature of an authorized signer to appear thereon).

Focus Bank does not cite any case to support the proposition that a digitally altered copy of a genuine check, modified and then printed on commercially available check stock, is an "alteration" under the UCC. The cases it cites for the proposition that a check should be assumed to be altered where the evidence is unavailable or unclear do not apply here, because the Check is available for examination and Focus Bank's uncontroverted evidence shows that it was a digitally altered copy of a genuine Medlin check and thus was counterfeit. The evidence does not establish a genuine issue of material fact as to whether the Check was altered.

As a result, Provident Bank is entitled to summary judgment on Focus Bank's affirmative defense that it breached its presentment warranty under § 400.4-208(a)(2).

B. Issues of Fact Exist as to Provident Bank's Knowledge

Under section § 400-4.208(a)(3), a presenting bank such as Provident Bank warrants that it "has no knowledge that the signature of the purported drawer of the draft is unauthorized." Id. Provident Bank asserts that it had no knowledge the drawer's signature on the Check was unauthorized, citing in support the Declaration of Gwendolyn Wertz, its Senior Vice President of Retail Banking and Rule 30(b)(6) deponent.

In support of its affirmative defense, Focus Bank asserts that genuine issues of material fact exist as to whether Provident Bank knew the drawer's signature was forged or unauthorized because (1) Provident Bank presented no witness who can testify regarding its acceptance of the

Check, and (2) there are facts tending to show that Provident Bank should have and would have known the signature was unauthorized if it had exercised ordinary care.

Focus Bank argues that Ms. Wertz's Declaration is self-serving and incomplete as to the issue of Provident Bank's knowledge because the customer service representative ("CSR") who accepted the Check for deposit is the only person with personal knowledge of the actions she took to examine the Check, and of the knowledge she had or did not have when she accepted it for deposit. Focus Bank states that Ms. Wertz admitted she never spoke with the CSR, and the CSR was not available for discovery because she is no longer employed by Provident Bank.

Focus Bank contends the evidence is sufficient for a reasonable jury to find that Provident had or should have had "actual knowledge" that Mr. Parris's signature on the Check was unauthorized. It points to undisputed evidence that Provident Bank accepted the Check for deposit from its client Ms. Baillie and sent it to Focus Bank for payment even though the Check is missing two security features expressly identified on its face: (1) "The back of [the Check] includes a tamper evident chemical wash warning box," and (2) the "[o]riginal document has [a] red keyhole icon that disappears with heat." (ECF No. 73 at 7-8; Check images.) Focus Bank states the two missing security features are also not included in the list of security features that appear in a box on the back of the Check, so it contends there is a mismatch between the security features identified on the front of the Check and the list of security features on the back. (Id. at 8.) In addition, Focus Bank points to the admission of Provident Bank's President in an internal email that "[t]here are many inconsistencies regarding this matter where [Provident] may have been able to detect before being defrauded."

Focus Bank states the evidence is that Ms. Baillie presented the Check for deposit to a Provident CSR in-person at one of Provident Bank's branches, her account had a balance of

approximately $2,169.89 at the time, and the Check was the largest item she had ever attempted to deposit. Focus Bank contends that in such circumstances, reasonable commercial standards (i.e., ordinary care) and Provident Bank's own policies required the CSR to "use extra caution" and carefully review the Check prior to accepting it for deposit when a customer attempts to deposit "a check larger than their current available balance or larger than their normal daily balance." Focus Bank also states that Provident Bank's policies required the CSR to examine the Check to confirm that the security features explicitly identified on the face of the Check were in fact present on the Check prior to accepting it for deposit. Focus Bank notes that the UCC requires collecting banks to exercise ordinary care in presenting items or sending them for presentment, § 400-4.202, and argues the UCC must be read as a whole and its various provisions construed in harmony with each other, citing In re First River Energy, LLC, 18-50085-CAG, 2019 WL 1103294, at *18 (Bankr. W.D. Tex. Mar. 7, 2019) (stating the UCC "must be read as a whole.") (internal citations omitted); Gash v. Lafayette County, 245 S.W.3d 229, 232 (Mo. 2008) (en banc) ("The Court is also mindful that a particular statutory phrase cannot be read in isolation. Instead, '[t]he provisions of a legislative act are . . . construed together and read in harmony with the entire act.'") (quoting Mo. Dep't of Soc. Servs., Div. of Aging v. Brookside Nursing Ctr., Inc., 50 S.W.3d 273, 276 (Mo. 2001) (en banc)).

Provident Bank responds that Focus Bank's evidence goes to possible negligence, i.e., that Provident Bank should have known of the unauthorized signature, but fails to raise an issue of fact as to its actual knowledge, which is required to establish a breach of the presentment warranty of § 400.4-208(3). Provident Bank points to the Missouri UCC's definition of "knowledge" as "actual knowledge," §§ 400.1-202, 400.1-102, and cites the United States Supreme Court's recent definition of "actual knowledge" to mean "real knowledge as

distinguished from presumed knowledge or knowledge imputed to one." Intel Corp. Inv. Policy Committee v. Sulyma, 140 S. Ct. 768, 776 (2020) (ERISA case). It also cites Missouri case law as embracing a subjective standard in defining "actual knowledge." See, e.g., Scholdberg v. Scholdberg, 578 S.W.3d 831, 839 (Mo. Ct. App. 2019) (requiring a subjective test for "actual knowledge" in the context of premises liability) (citing Wells v. Goforth, 443 S.W.2d 155, 158 (Mo. 1969) (en banc) (rejecting an objective test of actual knowledge based on what a possessor has reason to know)); State v. Nations, 676 S.W.2d 282, 284 (Mo. Ct. App. 1984) (finding actual knowledge requires the "heavier burden" that defendant be "aware"). Provident Bank asserts its interpretation of § 400.4-302 as requiring actual knowledge is consistent with other courts that have adopted and interpreted this section of the UCC, citing Decibel Credit Union v. Pueblo Bank & Trust Co., 996 P.2d 784, 786 (Colo. App. 2000) ("Finally, there is no claim that [the presenting bank] had actual knowledge of the forged signatures, and thus subsection (a)(3) does not apply.").

The Court agrees that Focus Bank must establish Provident Bank's actual knowledge to prevail on its affirmative defense. Under Missouri law, however, "actual knowledge can be inferred from circumstantial evidence." Scholdberg, 578 S.W.3d at 829. To establish actual knowledge by circumstantial evidence, the "circumstances must be such that the necessary fact may be inferred therefrom and must reasonably follow, so that the conclusion so reached is not the result of guesswork, conjecture or speculation[.]" Wells, 443 S.W.2d at 158 (cleaned up) (quoted case omitted)). See also Intel Corp., 140 S. Ct. at 779 ("actual knowledge can be proved through 'inference from circumstantial evidence'"; "[K]nowledge can be inferred from circumstantial evidence."; a party may contend that "evidence of 'willful blindness' supports a finding of 'actual knowledge.'") (quoted cases omitted).

13

Neither party cited a factually similar case in the context of an alleged breach of a presentment warranty and the Court has found none in independent research. In a number of the parties' cited cases, unlike the present case, the courts found no evidence in the record to indicate the depositary bank had reason to question whether the drawer's signature was unauthorized. See, e.g., Firstar Bank, N.A., 2004 WL 1323942, at *8 ("There is no evidence in the record that Wells Fargo had knowledge that the signature on the Check was false and Firstar does not even attempt to argue as much."); Citizens Fid. Bank & Tr., 472 N.W.2d at 202 ("A visual examination of the . . . check would not have disclosed that the check was counterfeit."); Central Bank & Trust, 332 F. Supp. at 1168 ("The cashier's check was regular on its face.").

The Court recognizes that Article IV of the UCC allocates liability to the bank in the best position to avoid fraud. "If there is a policy implicit in the UCC's rules for the allocation of losses due to fraud, it is surely that the loss be placed on the party in the best position to prevent it." Northpark Nat'l Bank v. Bankers Trust Co., 572 F. Supp. 524, 535 (S.D.N.Y. 1983). "The depositary bank has an opportunity to examine the check free of the time pressures which prevent collecting banks from giving checks more than a cursory glance. Perhaps more important, the depositary bank is in the unique position of being able to examine both the depositor and the check." U.S. Fid. & Guar. Co. v. Fed. Reserve Bank of New York, 620 F. Supp. 361, 372 (S.D.N.Y. 1985), aff'd, 786 F.2d 77 (2d Cir. 1986).

On summary judgment, the Court must view the facts in the light most favorable to the non-moving party. Under this standard, the Court finds that Focus Bank has set forth sufficient evidence to show there is a genuine issue of material fact as to whether Provident Bank had actual knowledge the Check contained an unauthorized drawer's signature.

**Conclusion**

For the foregoing reasons, Provident Bank's Motion for Summary Judgment on its strict liability claim in Count I will be denied as to Focus Bank's affirmative defense of breach of the presentment warranty of § 400.4-208(a)(3), and granted as to Focus Bank's affirmative defense of breach of the presentment warranty of § 400.4-208(a)(2).

Accordingly,

**IT IS HEREBY ORDERED** that Provident Bank's Motion for Summary Judgment on Count I (ECF No. 60) is **GRANTED in part** and **DENIED in part** as set forth in this Memorandum and Order.

**IT IS FURTHER ORDERED** that the trial of this case will take place at the Thomas F. Eagleton U.S. Courthouse in St. Louis, Missouri, on Tuesday, September 7, 2021. This is a change of courthouse location only.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 12th day of July, 2021.